UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X   Case No.:
THELMA GOMEZ,

        Plaintiff,

   -against-             **COMPLAINT**

NYHS DESIGN INC. d/b/a CLEO NICCI EYEWEAR
NEW YORK, HARRY YOUNG, *individually*, and
JACQUELINE WARNER, *individually*,

        Defendants
-------------------------------------------------------------------X

  Thelma Gomez ("Plaintiff Gomez"), by and through her attorneys, PHILLIPS & ASSOCIATES, Attorneys at Law, PLLC, hereby complain of the Defendants as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101, et seq. ("ADA"), the New York State Human Rights Law, New York State Executive Law, §§ 296 et seq. ("NYSHRL"), and the New York City Human Rights Law, New York City Administrative Code §§ 8-107(1), et seq. ("NYCHRL"), and seeks damages to redress the injuries Plaintiff suffered as a result of being discriminated and retaliated against and ultimately terminated on the basis of her actual and/or perceived disabilities (reactive airway disease).

2. In addition, this is a civil action based upon violations that Defendant committed of Plaintiff's rights guaranteed to her by: (i) the minimum wage and overtime provisions of the Fair Labor Standards Act, 29 U.S.C. § 207(a) ("FLSA"); (ii) the minimum wage and overtime provisions of the New York Labor Law, NYLL § 160 ("NYLL"); N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2 ("NYCCRR"); (iii) retaliation under the FLSA and NYLL; (iv) the NYLL's requirement that employers furnish employees with a wage notice

1

at hire containing specific categories of accurate information, NYLL § 195(1); (v) the NYLL's requirement that employers furnish employees with wage statements on each payday containing specific categories of accurate information, NYLL § 195(3); and (vi) any other claim(s) that can be inferred from the facts set forth herein.

## JURISDICTION, VENUE, AND PROCEDURAL PREREQUISITES

4. Jurisdiction of this Court is proper under 42 U.S.C. § 12101, et. seq., § 216(b) of the FLSA, and 28 U.S.C. § 1331.

5. The Court has supplemental jurisdiction over the claims that Plaintiffs brought under state and city law pursuant to 28 U.S.C. § 1367.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) as one or more Defendants reside within the Southern District of New York or the acts complained of occurred therein.

7. By: (a) timely filing an Amended Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on May 10, 2019; (b) receiving a Notice of Right to Sue from the EEOC on March 9, 2020; (c) commencing this action within 90 days of the issuance of the Notice of Right to Sue by the EEOC; and (d) contemporaneously with the filing of this Complaint, mailing copies thereof to the New York City Commission of Human Rights ("NYCCHR") and the Office of the Corporation Counsel of the City of New York pursuant to the notice requirements of § 8-502 of the New York City Administrative Code, Plaintiffs satisfied all of the procedural prerequisites for the commencement of the instant action. A copy of the Notice of Right to Sue is annexed hereto as Exhibit A; a copy of the transmittal letter to the NYCCHR, *et ano.*, is annexed hereto as Exhibit B.

## PARTIES

*Plaintiff*

8. At all times relevant hereto, Plaintiff THELMA GOMEZ (hereinafter referred as "Plaintiff WOODS") was and is a resident of the State of New York and County of the Bronx.

*Defendants*

9. At all times relevant hereto, Defendants NYHS DESIGN INC., was and is a domestic business corporation duly existing pursuant to, and by virtue of, the laws of the State of New York, with its principal place of business located at 57-55 Mazeau Street, Maspeth, New York 11378.

10. Defendant NYHS own and operate multiple locations under the name of "Cleo Nicci Eyewear New York", including location at 875 7th Avenue, New York, New York 10019, where the discriminatory conduct occurred (the "Midtown location").

11. Upon information and belief, Defendant NYHS employs fifteen or more employees.

12. At all times relevant, Plaintiff was an employee of Defendant NYHS.

*Defendant HARRY YOUNG*

13. HARRY YOUNG is an individual engaging (or who was engages) in business in this judicial district during the relevant time period.

14. At all times relevant, Individual Defendant HARRY YOUNG ("YOUNG") was and is an employee of Corporate Defendants holding the title of "owner."

15. That at all times relevant hereto, Defendant YOUNG had supervisory authority over Plaintiffs. Defendant YOUNG had the authority to hire, fire, or affect the terms and conditions of Plaintiffs, or to otherwise influence the decisionmaker of the same.

*Defendant JACQUELINE WARNER*

16. JACQUELINE WARNER is an individual engaging (or who was engages) in business in this judicial district during the relevant time period.

17. At all times relevant, Individual Defendant JACQUELINE WARNER ("WARNER") was employed by Corporate Defendants as a "District Manager."

18. That at all times relevant hereto, Defendant WARNER had supervisory authority over Plaintiff. Defendant WARNER had the authority to hire, fire, or affect the terms and

conditions of Plaintiff's employment, or to otherwise influence the decisionmaker of the same.

19. That at all times relevant hereto, Defendants, NYHS, YOUNG, and WARNER, are collectively referred herein as "Defendants."

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

20. Defendants operate a construction company located in New York.

21. Each Defendant possesses substantial control over Plaintiff's working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiff.

22. Defendants jointly employed Plaintiff, employer within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

23. In the alternative, Defendants constitute a single employer of Plaintiff.

24. At all relevant times, Defendants were Plaintiff's employers within the meaning of the FLSA and NYLL. Defendants had the power to hire and fire Plaintiff, control the terms and conditions of employment, and determine the rate and method of compensation in exchange for her services.

25. Upon information and belief, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000.00 at all relevant times.

*PLAINTIFF'S UNPAID WAGE CLAIMS*

26. Plaintiff is a former employee of Defendants and was employed as an optic sales associate and then as a store manager.

27. From approximately April 18, 2018 Plaintiff Gomez was hired by Defendants as a "Optic Sales" Associate and then in May 2018 was promoted to "Store Manager".

28. Plaintiff GOMEZ regularly handled goods in interstate commerce, produced outside the State of New York.

29. From approximately April 2018 until on or about May 19, 2018, Plaintiff GOMEZ generally work 8 hours per day, 5 days a week (approximately 40 hours per week).

30. From approximately May 20, 2018 until on or about June 24, 2018, Plaintiff GOMEZ generally worked 10 hours per day 5 or 6 days a week. (approximately 50 to 60 hours per week).

31. From approximately June 25, 2018 until on or about September 2018, Plaintiff Gomez generally worked 10 to 12 hours per day 6 to 7 days per week (approximately 60 to 84 hours per week).

32. From approximately October 2018 until on or about November 2018, Plaintiff Gomez generally worked 9 hours per day 5 days a week (approximately 45 hours per week).

33. From approximately April 18, 2018 until on or about May 19, 2018, Plaintiff GOMEZ was paid a fixed salary of $160 per day plus commissions.

34. From approximately June 25, 2018 until on or about November 2018, Defendants failed to pay Plaintiff any wages, except for a few partial payments towards what was owed to Plaintiff.

35. From approximately May 20, 2018 until on or about September 2018, Plaintiff GOMEZ was promised that she would be paid $20.00 per hour (plus commissions), however she did not receive regular wages.

36. From approximately October 2018 until on or about November 2018, Plaintiff GOMEZ was promised that she would be paid $22.50 per hour.

37. Throughout her employment, Plaintiff GOMEZ was paid by personal checks.

38. Plaintiff GOMEZ, however, was not paid at an overtime rate for any of the hours worked over forty as required by federal and state law.

39. Defendants did not provide Plaintiff GOMEZ an accurate statement of wages, as required by NYLL 195(3).

40. Defendants did not give any notice to Plaintiff GOMEZ of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*PLAINTIFF'S CLAIMS OF DISABILITY DISCRIMINATION UNDER THE ADA, NYSHRL and NYCHRL*

41. On or about October 20, 2018, Defendants hired Plaintiff's family member to renovate all of Defendant NYHS's locations, including but not limited to the Midtown Location.

42. Soon after the renovations began, Plaintiff began to experience nausea and dizziness, due to the toxic smell coming from the wood floors.

43. Despite the renovations, Plaintiff was still made to work long shifts. In fact, on the first day of the renovation, Plaintiff remained at the Midtown Location until approximately 3:00 a.m. in the morning.

44. As a result of this exposure, Plaintiff became extremely sick. Plaintiff's symptoms including pain in her chest, trouble breathing, and dizziness.

45. During the first week of renovations, Defendant WARNER told Defendant YOUNG that Plaintiff should be sent home.

46. However, Defendant YOUNG insisted that Plaintiff continue to work, despite the toxic fumes coming from the renovations.

47. Later that week, Plaintiff complained to Defendant YOUNG that she was feeling ill. She explained that her tongue was numb and that she was feeling dizzy.

48. In response, Defendant YOUNG closed the store and sent Plaintiff home. However, Defendant YOUNG told Plaintiff that he expected her back to work the next day and would bring fans into the store to air out the fumes.

49. On or about November 4, 2018, Plaintiff called Defendant YOUNG and began asking him about the wages she was owed for the months of September and October and explained that she was not going to work for free. Defendant YOUNG responded that they would

calculate her hours and would give her what she was owed.

50. Soon thereafter, Plaintiff went to work. However, Defendant YOUNG was no where to be found. Plaintiff soon learned that he was at another location, and that he had no intention to come to the Midtown location.

51. After leaving work, Plaintiff was driving home and began feeling chest pains and went to the Emergency Room at Montefiore Medical Center. As a result of various tests, Plaintiff was diagnosed with reactive airway disease.

52. On or about November 5, 2018, Plaintiff text messaged Defendant YOUNG telling him that he needs to pay her for wages owed to her for two weeks in September and October 2018 and that she does not work for free.

53. Plaintiff continued that she was diagnosed with reactive airway disease, and Plaintiff provided him with a picture of her Worker's Compensation paperwork provided by the hospital.

54. In response, Defendant YOUNG told Plaintiff that he would be investigating her hours and will pay her what she is owed.

55. Soon thereafter, Defendant YOUNG came to the Midtown Location and took Plaintiff's Worker's Compensation paperwork.

56. At this time, Plaintiff asked for a reasonable accommodation in the form of approximately a few days to a week of time off to recover from her ailments.

57. He then sent Plaintiff home and took Plaintiff off of the work schedule, told her that she would be covered and would be paid for her time off.

58. On or about November 13, 2018, Plaintiff text messaged Defendant WARNER and inquired into her schedule, as she was expected to return in or around that time. In response, Defendant WARNER told Plaintiff that Narine (Last Name Unknown) ("Narine"), Defendant WARNER's Assistant, would contact Plaintiff, as scheduling was "not my

responsibility anymore."

59. However, approximately one week later, on or about November 15, 2018, Narine text messaged Plaintiff and instructed her to meet her next door at the Metro Diner.

60. There, Narine callously told Plaintiff that she is being dismissed, at the direction of Defendants, YOUNG and WARNER, because Defendants are closing the Midtown Location.

61. Upon information and belief, the Midtown Location remained open under the ownership of Defendants.

62. As a result of Defendants' exposing Plaintiff to these toxic fumes, Plaintiff has been suffering from almost daily asthma attacks.

63. In addition, since the date of Plaintiff's initial emergency room visit, Plaintiff continued to visit the hospital for medical issues related to the working conditions at Defendants.

64. **Defendants' actions and conduct were intentional and intended to harm Plaintiff.**

65. At no point did anyone from Defendants attempt to engage in the interactive process in order to determine what, if any, tasks Plaintiff could have performed while working with or without a reasonable accommodation.

66. Rather than engaging in meaningful interactive process, Defendants terminated Plaintiff.

67. Upon information and belief, Plaintiff could have performed significantly most of her job responsibilities with or without a reasonable accommodation.

68. Plaintiff has been unlawfully discriminated against on the basis of her actual and/or perceived disabilities.

69. But for Plaintiff's disability, she would not have been subjected to an adverse employment action at the hands of Defendants.

70. Plaintiff was terminated for requesting a reasonable accommodation.

71. Plaintiff felt offended, disturbed, and humiliated by the blatantly unlawful and discriminatory termination.

72. Defendants actions and conduct were intentional and aimed at harming Plaintiff.

73. As a result of the acts and conduct complained herein, Plaintiff has suffered a loss of income, loss of salary, bonus, benefits, and other compensation which such employment entails.

74. Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced emotional distress.

75. As a result of the above, Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of the Court.

76. Defendants conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law. As such, the Plaintiff demands punitive damages.

77. Defendants are subject to the ADA.

78. Plaintiff was disabled within the meaning of the ADA and Defendants perceived Plaintiff to be disabled (reactive airway disease.)

79. Plaintiff is a qualified individual who can perform the essential functions of her employment with a reasonable accommodation as defined by §12111(8) of the ADA.

80. At all time relevant, Plaintiff's disability was a physical impairment which substantially limits one or more major life activities within the meaning of § 12102(1)(A) of the ADA, including, but not limited to, the functions of Plaintiff's respiratory system, gastric functions, and negatively affects her ability to sleep.

81. The above are just some of the ways Defendants discriminated and retaliated against Plaintiff while employing her.

82. Defendants conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law. As such, the Plaintiff demands punitive damages.

83. As such, Plaintiff demands punitive damages as against all Defendants, jointly and severally.

## AS A FIRST CAUSE OF ACTION FOR DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT

84. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

85. Plaintiff claims Defendant NYHS violated the Americans with Disabilities Act of 1990 (Pub. L. 101-336), as amended, as these titles appear in volume 42 of the United States Code, beginning at Section 12101.

86. Title 42 of the Americans with Disabilities Act of 1990, Chapter 126, Subchapter I, Section 12112 "Discrimination" states: "(a) General rule. - No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

87. Defendant NYHS engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of her actual and/or perceived disabilities.

## AS A SECOND CAUSE OF ACTION FOR RETALIATION UNDER THE AMERICANS WITH DISABILITIES ACT

87. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

88. The ADA prohibits retaliation, interference, coercion, or intimidation.

89. Section 12203 of the ADA provides:

> a) Retaliation. No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a

  charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

  b) Interference, coercion, or intimidation. It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

90. Defendant NYHS violated this section as set forth herein.

## AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION UNDER NEW YORK STATE EXECUTIVE LAW

91. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this complaint..

92. New York State Executive Law § 296 provides that,

  It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, **disability**, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

93. Defendants violated the section cited herein as set forth.

94. Plaintiff is entitled to the maximum amount allowed under this statute.

## AS A FOURTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY STATE LAW

95. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

96. New York State Executive Law § 296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

97. Defendants violated the section cited herein as set forth.

11

## AS A FIFTH CAUSE OF ACTION FOR DISCRIMINATION
## UNDER NEW YORK STATE EXECUTIVE LAW
## (Against Defendants, YOUNG and WARNER)

98. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

99. New York State Executive Law § 296(6) provides that it shall be an unlawful discriminatory practice: "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

100. Defendants, YOUNG and WARNER, violated this statute as set forth.

101. Plaintiff is entitled to the maximum amount allowed under this statute.

## AS A SIXTH CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

102. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

103. The New York City Administrative Code § 8-107(1) provides that

   It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

104. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code §8-107(1)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against Plaintiff because of her disability (reactive airway disease).

105. Plaintiff is entitled to the maximum amount allowed under this ordinance.

## AS A SEVENTH CAUSE OF ACTION FOR RETALIATION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

106. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

107. The New York City Administrative Code §8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discriminate against any person because such person has opposed any practices forbidden under this chapter. . ."

108. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code §8-107(7) by discriminating against Plaintiff because of Plaintiff's opposition to the unlawful employment practices of the Defendants.

### AS AN EIGHTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE (Against Defendants, YOUNG and WARNER)

109. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

110. The New York City Administrative Code § 8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

111. Against Defendants, YOUNG and WARNER, violated the section cited herein as set forth.

112. Plaintiff is entitled to the maximum amount allowed under this ordinance.

### AS A NINTH CAUSE OF ACTION FOR VIOLATION OF THE OVERTIME PROVISIONS OF THE NYLL

113. Plaintiffs repeat, reiterate, and reallege each and every allegation made in the above paragraphs of this complaint.

114. Defendants failed to pay Plaintiff, overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek, in violation of NYLL Art. 19 and 12 N.Y.C.R.R. § 142-2.2.

115. Defendants' failure to pay Plaintiff, overtime compensation was willful within the meaning of NYLL § 663.

116. Plaintiff, was damaged in an amount to be determined at trial.

## AS AN TENTH CAUSE OF ACTION FOR RETALIATION VIOLATION OF THE FAIR LABOR STANDARDS ACT

117. Plaintiff repeats, reiterates, and re-alleges each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

118. 29 U.S.C. § 215 prohibits an employer from discriminating against an employee for exercising rights under the FLSA. Specifically, it is unlawful to discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee. 29 U.S.C. § 215.

119. Defendant NYHS retaliated against Plaintiff because she complained about Defendant NYHS not paying her rightfully earned wages.

## AS A ELEVENTH CAUSE OF ACTION FOR UNPAID MINIMUM WAGES IN VIOLATION OF THE NYLL AND NYCCRR

120. Plaintiff repeats, reiterates, and re-alleges each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

121. Plaintiff was an employee of Defendants within the meaning of New York State Labor Law.

122. Defendants failed to pay Plaintiff the required minimum hourly wage rate for each hour of work during his employment.

123. Defendants violated Plaintiff's right to minimum wage pay under § 652(1).

124. Defendants also violated New York's Minimum Wage Order of 12 NYCRR Part No. 142.

125. On account of such violations, Defendants are liable to Plaintiff for actual, statutory and liquidated damages.

## AS A TWELFTH CAUSE OF ACTION FOR
## UNPAID OVERTIME WAGES IN VIOLATION OF THE NYLL AND NYCCRR

126. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

127. NYLL § 160 and 12 NYCCRR § 142-2.2 require employers to compensate their employees at a rate not less than one and one-half times their regular rates of pay for all hours worked exceeding forty in a workweek.

128. As described above, Defendant NYHS is an employer within the meaning of the NYLL and the NYCCRR, while Plaintiff is an employee within the meaning of the NYLL and the NYCCRR.

129. As also described above, Plaintiff worked in excess of forty (40) hours in a workweek, yet Defendant NYHS failed to compensate them in accordance with the NYLL's and the NYCCRR's overtime provisions.

130. Plaintiff is entitled to their overtime pay for all hours worked per week in excess of forty (40) at the rate of one and one-half times their respective regular rates of pay.

131. Plaintiff is also entitled to liquidated damages, interest, attorneys' fees, and costs and disbursements in this action for Defendant NYHS's violations of the NYLL's and NYCCRR's overtime provisions.

## AS A THIRTEENTH CAUSE OF ACTION FOR RETALIATION
## VIOLATION OF THE NEW YORK LABOR LAW

132. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

133. Plaintiff made a complaint to Defendant NYHS about practices that violate the NYLL— to wit — Defendant NYHS's unlawful non-payment of Plaintiff's earned overtime wages, in violation of NYLL § 170.

134. After receiving this complaint, Defendant NYHS retaliated against Plaintiff by decreasing his wage and his hours.

135. By retaliating against Plaintiff for his complaint about violations of the New York Labor Law, Defendant NYHS violated New York Labor Law § 215, which states that, "No employer ... shall discharge, penalize, or in any other manner discriminate against an employee because such employee has made a complaint to his employer ... that employer has violated any provision of [the New York Labor Law]."

136. Due to Defendant NYHS'S violation of the New York Labor Law § 215, Plaintiff is entitled to recover all appropriate legal and equitable relief, including but not limited to, compensatory damages, liquidated damages, attorneys' fees and costs.

### AS A FIFTEENTH CAUSE OF ACTION FOR FAILURE TO FURNISH PROPER WAGE NOTICE IN VIOLATION OF THE NYLL

137. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

138. NYLL § 195(1) requires that employers provide employees with a wage notice at the time of hire containing accurate, specifically enumerated criteria.

139. As described above, Defendant NYHS failed to furnish Plaintiff with any wage notice at hire, let alone one accurately containing all of the criteria required under the NYLL.

140. On or after February 27, 2015, pursuant to NYLL § 198(1-b), Defendant NYHS is liable to Plaintiff in the amount of $50.00 for each day after the violation occurred, up to the statutory cap of $5,000.00.

## JURY DEMAND

Plaintiff demands a trial by jury.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendants:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by the ADA, NYSHRL, and NYCHRL, by discriminating and retaliating against Plaintiff on the basis of her actual and/or perceived disabilities and for terminating her for requesting an accommodation.

B. Declaring that Defendants engaged in unlawful employment practices prohibited by the FLSA and NYLL by failing to timely pay Plaintiff earned wages and by failing to pay overtime wages;

C. Declaring that Defendants' violations of wage protections were willful;

D. Granting judgment to Plaintiff for his claims for unpaid wages as secured by the Fair Labor Standards Act as well as an equal amount in liquidated damages;

E. Granting judgment to Plaintiff for his claims for unpaid wages as secured by New York State Wage Orders and New York State Labor Laws as well as an equal amount in liquidated damages;

F. Awarding damages to the Plaintiff, for all lost wages and benefits, past and future, back pay and front pay and to otherwise make Plaintiff whole for any losses suffered as a result of such unlawful employment practice;

G. Awarding damages to the Plaintiff, retroactive to the date of her discharge for all lost wages and benefits resulting from Defendants' unlawful termination of her employment and to otherwise make her whole for any losses suffered as a result of such unlawful employment practice;

H. Awarding Plaintiff compensatory damages for mental, emotional and physical injury,

distress, pain and suffering and injury to her reputation in an amount to be proven;

I. Awarding Plaintiff punitive damages;

J. Awarding Plaintiff attorneys' fees, costs, interests, and expenses incurred in the prosecution of the action;

K. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendant's unlawful employment practices.

Dated: New York, New York
June 1, 2020

**PHILLIPS & ASSOCIATES,**
**Attorneys at Law, PLLC**

By: __/s/ Shawn Clark___
Shawn R. Clark, Esq.
*Attorneys for Plaintiff*
45 Broadway, Suite 620
New York, New York 10006
T: (212) 248-7431
F: (212) 901 - 2107
sclark@tpglaws.com